The General Court, after a full conference, without any hesitation, over-ruled the application, and the opinion was delivered by
DADE, J.
At the Eall Term of the Superior Court of Daw, for Prince William county, in the year 1824, the petitioner was convicted of the crime of murder in the first degree.
On the day succeeding that of his conviction, his Counsel *gave notice to the Attorney prosecuting for the Commonwealth, that a motion would be made to the Court to award a new trial, and on the third day after the conviction, the prisoner by his Counsel, moved Errors in arrest of judgment, and also for a new trial; both of which motions, were overruled, and the prisoner had sentence to be hanged.
The first and second errors in arrest of judgment, alleged, that the prisoner had not been indicted, varying the allegation only in the manner of setting it out.
The following certificate made by the Court at the time of over-ruling these errors, explains their grounds.
“In order to render the first and second of these alleged errors intelligible, it is certified by the Court, that upon the argument of the motion in arrest of judgment, the Counsel for the prisoner exhibited to the Court the Indictment, which, on the first day of the Term, had been returned into Court by the Grand Jury in proper person, ‘a true bill’ on which the prisoner had been arraigned, to which he had pleaded not guilty, on which the petit jury had been in due form of law charged, and which they had taken with them into their retirement: that this paper was one, the first entire sheet of which, had been covered with the several Counts of the Indictment, so as to leave a very inconsiderable margin, indeed, scarcely any at the foot of the last page: that this sheet had either been laid on a blank half sheet of paper, of the same size as the first, and folded with it, or it had been folded in the said half sheet. And on the back of the fold, and of course on the said half sheet, had been endorsed in the hand-writing of the *322 Attorney for the Commonwealth, ‘Commonwealth v. Burgess, Indictments;’ and immediately below, was further endorsed in the hand-writing of the foreman of the Grand Jury; ‘a true bill,’ Robert Hamilton foreman.”
The third error assigned, is, that .the “above-mentioned paper purporting to be an Indictment against the said prisoner, bears no evidence that it is an Indictment «found in this Court, the same not being entitled of the Superior Court of Haw of Prince William county, nor bearing any date: and so the said prisoner saith, that the said paper is not identified by the record of the proceedings against him the said prisoner. ” .
The whole foundation of the two first alleged errors, is, that the endorsement of the Grand Jury, was on a half *sheet of paper, on which, although folded with, or -around the Indictment, no part of the writing of the Indictment, was extended. In this Case, it is not absolutely necessary to decide, whether the endorsement, “a true bill,” be indispensably requisite to constitute an Indictment. If it were necessary to decide this point, it might well deserve to be en-quired, whether the law books, in declaring this endorsement to be necessary, to make the paper an Indictment, have reference to any other than the mere inceptive stages, while the subject is in the hands of the Grand Jury. A written charge preferred by the Attorney to the Grand Jury, is not, when handed to them, an Indictment, nor does it become so till sanctioned by them, which sanction is indicated by the above endorsement.
So far, and in this stage of the proceedings, the endorsement does indeed stamp on the paper, its character of an Indictment. But when a still more solemn act has been done, when the Grand Jury has appeared in Court, and there openly presented this charge as a true bill, of which a record has been forthwith made by the Court, this higher solemnity may well be supposed to take the place of any minor one, and it would scarcely seem necessary to look beyond this.
But, for reasons free of all difficulty, the exception cannot be sustained in this Case. The Court considers the papers folded together, endorsed and returned by the Grand Jury, as res integra, one whole and indivisible transaction. If the words of the criminal charge had extended over only the first half sheet, and then, the whole sheet having been folded as usual, the style of the Indictment and the endorsement of the Grand Jury had been written on the last half sheet, which was otherwise blank, it is presumed, this objection would . never-have been thought of. In like manner, had the half sheet on which this endorsement was made, been stitched or attached by a wafer to the sheet which was covered by the Indictment, the whole difficulty would have been obviated.
But, can such important legal distinctions be deduced from such slight mechanical differences? As to the consequences, which it is supposed, may ensue from the alleged laxity, they are all derived from an extreme hypothesis; the idea of the officers of the Court, in the face of the Court, and of the public, being guilty of a fraud, which must be inevitably detected. And even if this were a supposable *Case, it is sufficient to repel any inference which may be drawn from it, that the same tiling may happen in the Cases above-mentioned; which it is presumed, afford no room for doubt.
A further, and not less conclusive answer to these exceptions, is, that the objection was out of time. If there bad been any thing in it, it should have been offered before the prisoner pleaded in chief. There is no reason which applies to the refusal of the Court, to permit the prisoner to allege by way of Errors in arrest of judgment, that he has not been examined for the offence of which he has been convicted, which does not apply with equal force to this Case.
The question presented by the third exception, has already been decided in the negative, in the Cases of The Commonwealth v. Haught, (ante, p. 3,) and Taylor v. The Commonwealth, (ante, p. 94;) upon the authority of which, this objection was properly over-ruled by the Court below.
This brings us to the exception to the Court’s opinion, over-ruling the prisoner’s motion for a new trial. The basis of that motion was, that the facts of the Case did not disclose that high grade of malice, which is necessary to constitute murder in the first degree. It seems to have been the opinion of the prisoner’s Counsel, that the instances of murder, enumerated in the first part of the second section of the Penitentiary Act, (1 Rev. Code, of 1819, p. 616,) were intended to give the rule, and furnish the standard by which to construe the clause, declaring “any other kind of wilful, deliberate, and premeditated killing,” to be murder in the first degree; and that there can be no Case of murder in the first degree, where there is not at least as much malice as must exist in the enumerated Cases. This may be true, and yet there mayr be no error in this judgment. We consider the above recited clause, abundantly expressive of its purpose. The enumerated Cases were certainly not put for the purpose of indicating, that those which might occur under the recited clause, should resemble them in circumstances. But, if they were intended to influence the recited clause, it was by stiggesting the degree of malice which should appear in Cases comprehended within the recited clause. How, we take the expression “lying in wait,” not merely to mean his concealing himself in the path of his intended victim, for the *purpose of killing him, but the deliberately, and premeditatedly seeking an occasion to effect the deadly purpose. But, if the words “lying in wait” in this Statute, are *323 to be understood in their vulgar acceptation, and we can perceive that the petitioner might have lain in wait for the deceased, and slain him, without demonstrating more malice than he has already actually exhibited, how can we sajr that the Case under consideration, is inferior in degree to that supposed? Had the prisoner, immediately after receiving the injury, which he alleged the deceased had done him, retired fifty or a hundred yards from the scene, concealed himself behind a wall, sprung on the deceased as he passed, and stabbed him to death with a knife°taken from his pocket, instead of one, expressly, and by artful misrepresentation, procured for the purpose, this would have been killing “by lying in wait.” But there would not have been in that Case, clearer proof than in this of a wilful, deliberate, and premeditated purpose to kill. It avails nothing-, that there may be Cases of homicide under the influence of more deep and settled malice, than is displayed in this Case.
It is enough, that there is clear evidence of that degree of malice, which, when it shall have effected its object, the Legislature has considered worthy to be punished with death. It is not necessary to comment on the facts set forth in this Bill of Exceptions. We consider them as making out a Case, such as is above suggested, and therefore, we think, that the motion for a new trial was properly over-ruled, and are unanimously of opinion, that this petition for a Writ of Error should be rejected. Judge Dade, further remarked, that the Court did not mean to decide, whether it could be required of the Superior Court, to spread either the evidence or the facts, upon the record, in a Bill of Exceptions, after a conviction, and upon over-ruling a motion for a new trial. The propriety of such a practice, would be reserved for decision on some future occasion.